All right. We're ready to, you may be seated, I'm sorry. And we're ready to hear argument in our second case, Hicks v. Ames. Thank you. Good morning, your honors. Before we begin, Steve Alanya from Washington University School of Law in St. Louis. It's my honor this morning to introduce third year law student Lawson Sadler from Wash U Law, who's appearing under this court's rule 46A. She will be presenting the argument for Mr. Hicks this morning. All right, thank you very much. Ms. Sadler. Good morning, your honors, and may it please the court. For 27 years, Mr. Alan Hicks has waited for state courts to vindicate his federal rights. Now, the district court should hear Mr. Hicks' habeas petition on the merits, because the ineffectiveness of state court proceedings warrants excusing exhaustion under the text and purpose of AEDPA. There are two avenues by which this court may reach the correct result. The first and most straightforward way is based on the first 15 years of delay in this case. Because during this time period, the state utterly failed to act on Mr. Hicks' habeas petition, and the structural due process violation of a conflicted judge is presumptively prejudicial. The second is based on the full 27 years. I want to go to the second, but there's a tension there, right? I get the idea that you have a former prosecutor acting as your judge. That seems like a problem. The challenge here is that he didn't seem to be acting as a judge at all. And so we've got a little bit of a tension in your argument, and I just wonder whether that matters. If we really are trying to focus on, I'm not sure this is where you ought to focus, but if you're really focusing on that, it's a little hard to say that in those 15 years he acted in a judge in any meaningful way. Your Honor, Judge Spalding did act as a judge because he had a responsibility both under federal law and under state law to do two things, to recuse himself or to act on Mr. Hicks' case. And so that inaction is still a problem and is in its own effect an action because it creates prejudice against Mr. Hicks for 15 years. So while I understand your concern that Judge Spalding didn't do anything in Mr. Hicks' case during that time period, that is the problem, Your Honor, because Judge Spalding had that responsibility, and that is why it is presumptively prejudicial against Mr. Hicks. But Your Honor, if you would like to look at the second option that is before this court, that is the full 27 years of delay. And so when we look at the text of AEDPA, the text of AEDPA supports excusing exhaustion for Mr. Hicks at this time after 27 years because state proceedings are ineffective to protect his rights. And so for these reasons, this court should reverse and remand because these egregious circumstances must be addressed after 27 years. How are we supposed to analyze a situation like the first 15 years, and then this happened a few other times later in the sequence where nobody does anything? So Mr. Hicks filed this petition. It looks like what happened is his TRO was denied and there was a clerical error that's made everyone think the whole petition was resolved. But for 15 years, the court didn't act on his motion for counsel or any of that. But he also didn't follow up after a year or two or three and say, hey, I have a PCR motion pending that I want you to address. How do we evaluate that under the standard of ineffective to protect his rights? It doesn't strike me that state processes have proven ineffective if someone just files one document and then never pursues their case. But how are we supposed to evaluate that? Your Honor, first, there's two answers to that question. As to the first issue you're mentioning with the temporary restraining order and it appears that there was a clerical error as the state suggests, that is still a failure of the state, Your Honor. And so at that point, it is the responsibility of the state to correct that error. But surely, AEDPA, I mean, the whole, like AEDPA's and these requirements for exhaustion are trying to limit federal courts from interfering to give a state court a chance to resolve these matters themselves because they also can apply the Constitution. So it seems odd to say, well, AEDPA means the state court makes a clerical error and doesn't recognize it, then everything's out the window and federal courts can rush in. So that doesn't seem to me to mean it's ineffective. It means somebody made a mistake. I understand, Your Honor. However, we have more than just one clerical error here. We have decades of errors by the state and we have decades of time at which the state should have acted on Mr. Hicks' habeas petition and did not. So this court need not create a holding that would allow petitioners like Mr. Hicks to flood this court with litigation. This can be a very narrow and exceptional case, Your Honor, because- Well, one would hope this is an exceptional case where the state appears to me to just have been woefully inadequate at every turn. And I'm sorry, I interrupted your question. No, one other question I had about ineffective to protect the rights is it looks like the PCR court set a deadline for Mr. Hicks in January 2019. They set a deadline of July to file a second amended petition and said, you know, I'm gonna act on this by September 2019. But he never filed a second amended petition and instead he filed a habeas petition. So the court gave him the opportunity to amend a second time. He didn't do it and instead came to federal court. Again, how do I interpret that through the lens of 2254's requirement that the state procedures be ineffective, right, incapable of protecting his rights? Your Honor, I would say in regards to that 2019 scheduling order, that that was a failure of the court appointed counsel, specifically court appointed counsel Hosler. I would point to page 584 of the joint appendix there to see that it was Mr. Hosler who continued to ask for these continuances and failed to meet the scheduling order. And also we see that the scheduling order was just continued by the state for no apparent reason as well. So yes, there are certain issues. We see that Mr. Hicks was unable to file. It's hard to say, like there's no reason when one way to interpret this sequence of events is that the state court is giving him every possible opportunity to file and amend and make as many arguments as he wants. They're giving him extensions. He's had a lot of trouble with counsel, keeping counsel, giving counsel the materials they need. And the court is being overly solicitous in trying to give him an opportunity. We don't sit in judgment of how state courts operate their systems. At what point are we allowed to declare, well, this is just, if this is incapable of protecting his rights, if there's still a docket where things are happening? Well, Your Honor, you can look to the fact that you can look to similar cases that this court has decided, specifically Plymail against Mirandi in 2016 and Ward against Freeman in 1995, which are unpublished cases, but dealt with delays by state courts, even where the petitioner was partially responsible for some of the delay and found that exhaustion should be excused. Those were 15 years delays and 20 years. I don't think Plymail found that exhaustion should be excused, right? We sent it back for the court to evaluate that. It was sent back to the same district judge, Your Honor, as in this case, and that judge did find that exhaustion should be excused. And that was because it was dealing with this question that you're getting to, which is the attribution of the delay and who is responsible for it. And what we see is that those- But what does that really have to do with the statutory standard, which is that the procedures are ineffective to protect the applicant's rights? It is a judicially created standard, Your Honor, that we see in both the Barker test that has been applied and the Third Circuit test that was imported into the district court below. But you're right, it is not in the text of AEDPA. And we do think that if you just look at the text of AEDPA, you can see that currently, as shown in the filing of the 28-J by the state, the state is trying to dismiss Mr. Hicks' habeas petition. That is not showing- Wasn't there another problem during that time period because this, on the state's part, because the state once again assigned a prosecutor that had represented one of appellant's co-defendants? That is exactly correct, Your Honor, yes. And Mr. Hossler was no longer in private practice. How long was he no longer even in practice during this time so there wasn't a valid attorney assigned to him at all? Your Honor, we don't know. We simply don't know. We know at least there was a two-year period in which the court appointed Mr. Discoli and never notified Mr. Hicks for two and a half years. I would point the court to page 642. And again, with Mr. Hossler leaving private practice, we don't know when that happened. This goes to the fact that Mr. Hicks has had ineffective counsel who has failed to support him in his habeas petition. And to get to your question earlier about the second amended habeas petition, Mr. Hicks tried to stave off this issue by saying in 2017 that his amended habeas petition that he filed because his court-appointed attorney missed the deadline was final. Mr. Hicks would have happily had a decision be made on that amended habeas petition in 2017, and yet the state court, here we are nine years later, has failed to act on it. And so when we are looking at the text of AEDPA and asking it- Can I ask a question about the text of AEDPA? Yes. It uses and focuses on this word ineffective. The Supreme Court recently interpreted that word in a case called Hendricks and interpreted it inadequate or ineffective to be impossible or impractical as defined by access, not success. If I transported that definition here, posit that that gives you a really hard road to hoe, do you think that that's like a fair thing to do? Like this also interpreting the word ineffective in the habeas context and really focuses on impossible or impractical to access the relief. Should we apply Hendricks here? And if we should, tell me how you think you clear that bar, which is sort of defined on access, not success. Your Honor, I'm not familiar with Hendricks specifically, so I can't speak to how perhaps the context of that case has to do with Mr. Hicks' case. However, just going off of your definition, I think Mr. Hicks would still meet that standard because we see here the court is trying to deny him access. They have filed a motion to dismiss in this case on the basis of a transcript that the state actually possesses. I would point this court to our reply to the 28-J. So denial of something is not a denial of access, right? Access is you can't show up in the first place, right? There's nowhere to show up. Like to be denied on the merits or on a procedural like problem is not a denial of access, right? That's a denial of success. So what the court in Hendricks seems to be saying, and I totally understand you're not familiar with it. I'm not, I don't want you to, I'm not trying to push you on it. But if you just accept that definition for a minute, those are arguments about success. And there's no doubt, like there's success problems, right? But if ineffective means, you know, a denial of access, just accept for a minute that there's a case in a different context that says that. It seems like he got access here. Wasn't very like good access. It obviously has not led to success. It's like a embarrassing thing, I'm sure, for the great state of West Virginia. But it's like, he's got access to it, right? And he could have filed, you know, motions for mandamus, right, those were available resources for him. He could have filed a second petition as ordered by the court in 2019, right? It wasn't that he didn't have access to it. He just lacked success. I have two answers to that, your honor. Perhaps we could look at the text of 2254B1B1, which asks whether state proceedings are available at all. And maybe that gets to the access problem that you're talking about, and would then mean that ineffective is not appropriate in that definition. But secondarily, your honor, I would say that the structural due process violation that we have since seen repeated with the appointment of Judge Sorcia has meant that his access has been destroyed to the courts. And that is because we can look at Williams against Pennsylvania and see that the Supreme Court says that when a judge is both an accuser and adjudicator on the case, that is a structural due process violation. And so Mr. Hicks has- And you think the fact that he didn't move to recuse that judge, you think it's such a structural error that he had no obligation to raise it? I do, your honor, for two reasons. What's the basis of that? Like I said, if I get, this is wrapped inside of a lot of things, but if I had that particular question, right? That like a individual that's incarcerated has no obligation to raise the bias of his own judge when he has every reason to know of that bias. I understand maybe if the defendant doesn't know, but he has every reason to know that this is the same guy that put him away. What do I look to? Where would I like find support for that? So I would say there are two things, your honor. The first is that Mr. Hicks was unrepresented because Judge Spaulding failed to act on that motion to appoint counsel. And so he did not have a counsel who was able to do that on his behalf. And that was his right under West Virginia law. In addition, your honor, I would point to Williams against Pennsylvania as well, which does not say that it is the responsibility of the defendant to ask for a motion to recuse. That is not the basis of Williams against Pennsylvania. And finally, that it was Judge Spaulding's responsibility under West Virginia judicial code to recuse himself. It is not the responsibility of any plaintiff or defendant in that type of position to ask for the recusal. But we do see that when Mr. Hicks, after being in this position for over 20 years, had more information and had counsel, he did motion to recuse Judge Sorcia when he was the prosecutor on Mr. Hicks' habeas case. So we see that that might be an opportunity that is more akin and less of a structural due process violation. Sort of shows that he could, right? I mean, it probably that the second motion sort of cuts the other way, right? It shows that he had access. If I'm going back to this question about, do you have access? It sort of shows that he had access to do that. He was represented by counsel at that time, your honor. So I believe that that gets into part of the issue and seeing my time has expired, I will remain for rebuttal, thank you. All right, thank you. Mr. Seckman. Good morning, and may it please the court. My name is Caleb Seckman on behalf of Respondent Ames. This court excuses exhaustion only in rare, exceptional circumstances of peculiar urgency. As you heard, Petitioner- Is this not exceptional? Does this happen all the time in West Virginia? We don't believe that this is exceptional and these- It's not exceptional. These circumstances don't come up in West Virginia, but they're not the kinds of circumstances that excuse exhaustion. They point to two things, Petitioner points to two things, the length of the delay and the presence of a past conflict. And the length is what, almost 30 years? 28 years, your honor. Mm-hmm. But without more, a delay itself is not enough and the remedy for the conflicted judge has been provided. So starting with the delay, your honor seems concerned as well. The state admits that this is a long case. The state does not attempt to say that it's not. But Petitioner needs to also show- Who's responsible for the majority of the delay? The majority of the delay, the beginning period would be the state's responsibility that first 15 years. 15 years. Exactly, your honor. But since 2012, we're nearing 13 years and that's largely attributable to Petitioner at this point. Why? So it's responsible for him because starting in 2012, when he finally contacts the court again, he is almost immediately unable to work with the counsel assigned to him. And each of his, or four of his counsel have said the same thing. They've said that, I don't have the records I need to represent Hicks in his case in the way that he has framed it in the saying that he is relying on these documents. And that's Hicks' fault. Is that the trial transcript? It's the trial transcript. Doesn't the state have a copy of the trial transcript? So your honor, by all accounts, that transcript is not the official version. But the state does have a copy of the trial transcript? It's got a copy of what appears to potentially be, but Hicks has based his case on other things as well. He said, I have a full certified copy of the proceedings. And he said that this is what I'm basing my case on. And we can see that pretty clearly with Attorney Rosen. And he asked for the, on his transcript. So he said he would give it to counsel if the fee, copying fee, would be waived. Was that ever ruled on, waiving the copying fee? I believe in 2022, at that hearing, he was ordered to actually turn it over and the fee was waived. In 22? 22. So, but you were saying that starting in 2019, it was his fault because he wouldn't give, or maybe even earlier, because he wouldn't give the documents to his attorney. But he, way back, asked for that fee to be waived and it wasn't waived until 2022. So now whose fault is that? Well, Your Honor, the court did agree to waive the fee in 2017. He just wasn't ordered to do so. And starting in 2012, he could have given the documents to Attorney Bayless. He just didn't. And we know that Bayless needed them because he's filing these motions to continue. He's trying to find- Bayless? When did he get Bayless? That was in 2022, right? Bayless is 2012, Your Honor. When? Oh, I get confused with all these attorneys and judges that used to be prosecutors and prosecutors that used to represent the co-defendants and ignoring everything for 27 years. So forgive me if I get confused. What were you saying? Attorney Bayless comes on the case. He's the first assigned counsel and he immediately has this problem of not being able to access the record that he needs. He files, I believe, three motions to continue. And this isn't the only problem, though. But Hicks immediately starts having problems with Bayless. He petitions for a writ of mandamus. He asks for what he calls a competent attorney. What happened to the writ of mandamus? The Supreme Court denied it and there was movement below and it was denied on those grounds. So he has tried mandamus before and that didn't work? It did work. His case was still moving. It was denied, you said. It, yes, it was. The Supreme Court didn't grant the relief, but the- When was it that Attorney Hostler was no longer in private practice? It's unclear from the record, Your Honor. So it's not until 2022 that Petitioner finds out that his attorney that was assigned to him is not even in private practice anymore? That's correct, Your Honor. And that goes to Petitioner sitting on his rights here. From 2019 to 2022, he doesn't do anything. Hostler comes on the case. He says, look, I need- Hostler is the one who didn't do anything. Hostler did his best. He came in, he said- How do you know he did his best? Because he came in and he told the court the same thing that Rosenblatt was saying. I can't get these records. He filed, I think, three motions also to continue. He even went and visited Hicks in prison and said, I need- You credit an attorney for visiting his client in prison? Your Honor- That's some really trying. Your Honor- Shouldn't a client visit their attorney and communicate with them? The visit alone isn't what I'm trying to- The way you said it was, he even went and visited him. I apologize, Your Honor. Like that was some noble effort. I apologize. It may have been on his part. I can't tell. He visited him and asked for the record, and that's the significance of the visit, Your Honor, is that Hostler goes and he says, you have these records. You keep telling everybody you have the records and that's what your case is based on. I need them to represent you. And in Petitioner's own words, Hicks' own words, he says, I refuse to turn them over to a man I just met. And that he said Hostler was extremely upset about this. And so- Because he only had one copy, right? Because the copying fee needed to be waived. The copying fee was waived by that point, Your Honor. And I think you said it was waived in 2017. Where is it? Where can I see that on the record? I believe it's in 2017 at the, it's JA546, maybe seven, Your Honor. Okay, thanks. And so these attorneys have all said the same thing. They have told him, I need these records to continue, but he just won't get them to him. These are his attorneys and he, so he's saying that that's the problem. But even accepting that these attorneys are the problem and not Petitioner, if their counsel is the problem- No, I think the state is the problem. The state was the problem from the first beginning, Your Honor. The state acknowledges that and I don't want to shy away from that. This beginning- For over half the time period, the state's been the problem. Agreed, Your Honor. And the state acknowledges that, but in the time period from 2012 to now, that goes back to Petitioner. And if it doesn't go to him, he's saying, it was my counsel, they were inadequate. But inadequate counsel, again- Can I ask a slightly different question? So this is, we're asking a lot of like, retrospective questions, right? As they say, mistakes were made. But the statute, as I read it, asks the question of whether circumstances exist, that is like presently, that render such process ineffective to protect. And so that seems to be asking the question, not were mistakes made, which they obviously were here, but whether the process that we have now, the pending proceeding, is ineffective to protect the rights. Um, except for a minute that I think the past 28 years don't inspire a great deal of confidence, but why should I find, or why should I, why does it appear, as the statute says, that the process today is likely to be effective in adjudicating the rights of Mr. Hicks? So I mean, what in the record suggests to me that like West Virginia is now gonna get around to resolving this? So we agree with that framing, your honor, and I would point you to our update to the court that the state has filed a motion to dismiss, and that gives Hicks a couple of options here. He can either change his litigation strategy and avoid these claims that he's basing on this record that only he has, or else just make the copies that he's been ordered to make. Either of those things would resolve that, the state would be able to respond, and the case would go on. And how long has Hicks been given a timeframe to make that decision? Not yet, your honor, that's just the motion, the court hasn't ruled on it. And has the West Virginia court indicated in any way that it intends to act on that motion to dismiss? The court hasn't ruled on that motion at all yet, your honor. Has it set a hearing? Not yet, and there was a problem that the case was reassigned to a judge. Yeah, another judge, yeah, I get it.  Has it been reassigned already? Do we have a new judge? I can represent that it has. That was yesterday, actually, I was informed of that, and so it has been reassigned, but of course that took a second to do, and then now we have to wait for the court. Hicks has the time to respond to this motion, of course, and so there's been no ruling on this motion to dismiss yet. And is Mr. Hicks, I know he's represented here, but is he represented in the state PCR proceedings today? As far as I'm aware, the record reflects that Gane was his last wanted attorney, and there's no evidence that he came off the case. Gane, the last name? Jason T. Gane. Okay, do we know whether he continues to practice law? Is he alive? That's not my question. Sorry, I didn't mean to preempt your question. No, that's a good question. I mean, normally these would be crazy questions, but they don't seem to be crazy questions given what's happened here, right? As far as I'm aware, Your Honor, he is alive and practicing law. Yes, he is. I can agree with that. I mean, do you know him? I don't know him. He was on another case representing someone else in a different case, so I can't say. But it's not before this court. Yeah, no, no, I just. And so, in part, I take your argument to be that given that, what we can't say here is that there's no, the circumstances don't exist that it will be ineffective going forward. It might well have been ineffective for the last 28 years, and that may have been to blame of different people at different times, but I take part of what you're saying is that there's no reason to conclude that it is ineffective going forward. Yes, Your Honor, I think that's really the central theme here, is that exhaustion is about whether there is a remedy available now. It's not about whether there was one previously or whether there were issues in the past. It's about whether now the state court could render a decision. Do you have a view on Hendricks, right? So Hendricks interprets the word ineffective along with the word inadequate, but inadequate or ineffective in a very restrictive way and limits it to access and not success. And you might, if you sort of imported that definition, I'm not saying you should or shouldn't, but if you did import it, it would obviously create quite a problem for Mr. Hicks. Do you have a view on Hendricks? Are you familiar with it? If not, don't make one up. This is not a quiz game, right? If you do, I'd be interested in it. If you don't, that's fine too. Your Honor, I'm not familiar with the context of Hendricks, but that definition we think is appropriate here, especially given what you heard from Petitioner's Counsel that this is an extrajudicial test we're looking at. And so given the context of AEDPA, the comedy issues, the federalism concerns, it should be read restrictively. It should be about whether this is impossible and not just whether it has gone the way a petitioner would want. I looked on all those pages you gave me before and on pages surrounding it. I can't find where the court, and maybe the court did at some point, waived the copying fee for that transcript that it ordered in whenever, 2022, that you turn over. I apologize. I may have been mistaken then, Your Honor, but I thought that it- Mistaken in the page sites or mistaken that the court had actually waived the fee? I thought that in that hearing, the court had said, we'll get that waived if we need to do that. But I apologize if- We'll get that waived if we need to do that. Is that a court order waiving the fee? Saying, we'll get that waived if we need to do that? So that's not a formal court order, Your Honor, but it shows that the court was willing to work with him. And there's nothing from Hicks that shows he ever did anything after that. What's he supposed to, the court has to, the court even in the language, we'll get that waived if we need to do that. Yeah, we need to do that. It keeps saying, I'll give the transcript if the copying fee is waived. And it's never waived. And then he's ordered in 2022 to give it over. Your Honor, I believe that reflects the court's willingness to work on him. Maybe it could have been more careful in that language. But we see Haas-Stetler goes, he tries to get these records so that he can make copies of them and review them. And petitioner refuses him as well. And so I think- Right, because the fee hadn't been waived. Well, Haas-Stetler would have covered that fee himself at this time. I mean, he was representing him court appointed. So I don't think that reflects petitioner saying, I can't afford to do it. I think it just is a matter of him not cooperating as he hadn't with Rosenlieb, as he continued not to with Haas-Stetler, and then again with Gane. And we've talked a little bit about these time periods where petitioner did nothing. And we think that that's important here because AEDPA actually requires a petitioner to be diligent in pursuing the factual development of- But it's not important when the state did nothing for 15 years. It's important, Your Honor. In my opinion, for more than 15 years, but for the majority of the time delay. Your Honor, in the AEDPA context, the burden is on a petitioner to develop that diligence. And we, as far as sitting on his rights, we think that that's an important note there. I mean, from 97 to 2012, the state, of course, accepts responsibility, acknowledges it's to blame largely for that portion of the time. But there's two things there. First, there's no evidence of malfeasance on the state during that time. It appears to be negligence, which is, of course, not a good thing. But it's a neutral reason that the courts have called that. And so when you're weighing it, it's weighed less heavily. But also, petitioner did nothing either. As Your Honor's pointed out, he didn't file anything with the court. He didn't send a letter. And we know that they were available because when he did in 2012, the court responded. It appointed him counsel and things got moving. Can I just make sure that you're not making two arguments that were available to you that you either chose not to or did not, for whatever reason, but I just wanna make sure. So the Certificate of Appealability here was defective, just accept that as a baseline. You have not argued that it was defective and that that requires action on our behalf. Is that right? Your Honor, no, we do think that we shouldn't consider this second issue of judgment. No, no, I get the scope of the COA. That's a separate issue and we can talk about that. But the COA itself is defective. We don't have to get into the nuance. I'm just asking, you're not arguing that the COA in total is defective because it fails to identify a constitutional issue? Your Honor, we didn't make that argument, not where you're supposed to. Okay, just making sure. And then the second argument, you raised a statute of limitations argument below and the district court rejected it. And you have not raised that issue on appeal either. So in other words, the statute of limitations that Mr. Hicks' federal action is barred. And you've not raised that on appeal either? No, Your Honor. Okay. And you didn't object to that before the magistrate issued a recommendation, right? And you didn't object and the district court adopted it? That's correct, Your Honor. So there's time periods where he does nothing and we see the first one, and then again from 13 to 16, and again from 19 to 22, and even to now, we have this motion to dismiss pending. Like I said, it will give him the chance to do what he can to resolve this case. Turning to prejudice, there's also not prejudice from the delay in Hicks' case. His records aren't lost, he has them. So while everybody else doesn't have access, he certainly does, he has said that time and again. And his claims, moreover, are not the kinds that would require a great deal of factual development to resolve beyond what's actually in the record. They're the kinds of things that an appellate court would review de novo, largely, and so the prejudice here is minimal as well. So under Barker, we think that the factors way against Hicks and should become, exhaustion should not be excused for that reason. And I wanna talk a little bit about Judge Spalding's presence as well. The state agrees that this was improper at the beginning, but this has been corrected. There's nothing else to do here. The remedy for a conflicted judge is to reverse rulings, get them off the case, and keep going forward. There's no precedent for saying that a former conflicted judge infects proceedings in a way that makes things later on excusable for exhaustion purposes. And the petitioner kind of hints at Judge Spalding intentionally slowing the case. We don't think that that's grounded in the record. There's nothing to suggest that. The state concedes that there was this potential accident, that's our best theory at least, but there's nothing in the record to show that Judge Spalding intentionally tried to slow the case, deliberately tried to do it, and that's important because those are the kinds of cases you see where exhaustion is excused. Did Judge Spalding do anything? Judge Spalding ruled on that initial jurisdictionally improper, venue improper motion, and then from there, doesn't period anything on the case, no. For how many years he didn't do anything? He was on the case. It's not specifically sure, but the case goes to 2012. Sometime between there, it's reassigned. Judge Spalding dies, Your Honor, and is no longer on the case. So sometime between 97 and 2012, he is not on the case because we see this whenever Hicks goes to the court. The case is being handled by a different judge at that point. It just appears that the record was closed, and so nobody knew to do anything, which again, the state concedes is a problem itself, but it's been corrected. The state is trying to move forward now. Hicks is to blame for 2012 onward largely. Where he's not to blame, it's his counsel, and the actions of counsel are imputed to the client. The Supreme Court made that clear in Brillen. This court's never held otherwise, and petitioners attempt to put a gloss on that by saying that Hicks needed to condone or personally cause these actions isn't based in any kind of precedent that would bind this court. Supreme Court has certainly not said that. Plymail doesn't say that, and they rely on a district court case that does admittedly use those words. But Hicks was trying to relieve himself of his woefully inadequate multiple attorneys. But for Bayless, he filed a state bar complaint against him, and Bayless was removed. For the other attorney, De Scoli, he tried to, he filed a pro se motion. He wanted to represent himself. Was that ever granted? No, Your Honor, that was not granted, and I think that it reflects the- And he filed that because nothing had happened. He filed that in 2016 because nothing had happened between 2013 and 2016. So he filed a motion to proceed pro se to get things moving. Your Honor, it appears the district court didn't think he could represent himself at that point. But then you're blaming him for that delay when he tried to get something accomplished himself, rather through inadequate counsel, which at that time was De Scoli, not Rosenleib. You were gonna tell me about Rosenleib. I understand about Rosenleib. I'm talking about up through 2016. If I may respond, Your Honor? Please. Your Honor, from 2013 to 16, Hicks doesn't do anything until that motion, and that's what kind of gets the case going again. But what Jay did, he filed a bar complaint against Bayless, and Bayless was removed. Right, Your Honor. The post that after Bayless is removed, De Scoli's put on, and that's where we get this period of silence. So that's when Hicks is quiet. And because this court strictly enforces these requirements, we ask that you affirm the district court's ruling. Thank you. All right. Ms. Sadler? May I ask you to start with this question? So, just looking at the language here, ineffective to protect the rights, how would you have this court define that? Other courts have defined it, it seems like, in a variety of ways, but how would you have us define it? Yes, Your Honor. I would point this court to Duckworth against Serrano, which is a pre-AEDPA case in regards to the specific document that was filed. But Duckworth against Serrano said that exhaustion should be excused when state court proceedings are so deficient as to be futile. That is, in fact, a far lower standard than the ineffective that is given in AEDPA, but if you are looking for a definition that is grounded in the Supreme Court case law, I would point this court to that, and I would say that, in this case, Mr. Hicks' state court proceedings have been so deficient as to be futile. Just to make sure, so what you would say is a state court PCR proceeding is ineffective to protect an individual's rights when it is so deficient to be futile. That is one option, Your Honor. And then you would, I know, I'm just asking you for, I'm looking for an option, right?  And you would say that that is met here, why? So I understand how, in the past, it has been extraordinarily deficient, but I take this question to be a prospective inquiry, right? Not, has it been terribly deficient in the past? Let me just say, I fully agree with that statement. That statement just doesn't answer the question, I'm afraid. So why is it that you think the state system, as we stand today, is so deficient to be futile? As we stand today, Your Honor, there's too much baggage in the Putnam County Court for Mr. Hicks' case to be properly adjudicated. We have seen that there have been two conflicted judges, that Mr. Hicks has had five inadequate appointed counsel, that the state has sat on multiple motions, ignored letters from Mr. Hicks, that there is just too, I understand that you want this to be prospective, but case law across the country says that this is a totality of the circumstances inquiry where we do look at the past state court actions because that indicates what the state will do in the future. And as you pointed out, the state has not set a hearing or any sort of timeline on the motion to dismiss. There's obviously quibbles between counsel about this transcript that the state does possess, but that they want Mr. Hicks' copy. And as Your Honor pointed out, they did not file an order in 2017 for that. So we can see here- The state says the copy they possess is not the official transcript. That may be the case, Your Honor. I would point Your Honor to Exhibit 1 of the district court's motion to dismiss, where there are 400 pages of the trial transcript, which appears to be whole and complete to me, at least for factual review. But Your Honor, to get more to this question of AEDPA and what is required here- Do you think in a slightly different case that a defendant could, for whatever reason, have the one thing that was necessary and could choose to just not turn it over and then show up to federal court and be like, you get to review my stuff de novo because they wouldn't rule even though I'm the one that has the goods? Well, that is an extreme possibility, Your Honor. It, as a matter of common sense, does not pan out because why would an individual- Sort of a little bit seems like it's like what happened here. No, Your Honor, because why would an incarcerated individual want to continue to stay his state court PCR proceedings for decades? Mr. Hicks would like to- I don't know, but it seems like that's what happened. Now, I understand there's a copying fee issue and maybe that explains it. It's not like obvious to me exactly why the copying fee matters. Like you can hand it to your lawyer. I understand he didn't trust his lawyer, but that's like a choice that he's making. So it seems a little bit like he's just saying no. Your Honor, I would disagree with that as a matter of the record. And I would point, Your Honor, to our reply briefing, page 23 specifically, which discusses all the ways that Mr. Hicks has acted affirmatively on his case. To get the transcript to his lawyer or- He has offered it multiple times, Your Honor, in 2017, 2019, and 2023, that we have at least in the record. And I don't know if he has continued to offer it since then, but- And he's also moved to proceed pro se. He has before because of how ineffective counsel has been, Your Honor. But what this case comes down to and what you should consider when you're asking this question of whether AEDPA requires exhaustion here is the comity interest of the state. The state gets one shot at adjudicating a federal right, as the Supreme Court has said in Duckworth against Serrano and O'Sullivan against Borkle. That state lost its one shot probably two decades ago. We see here that Mr. Hicks deserves a place to vindicate his federal rights, and that is the appropriate result in the district court. We ask this court to reverse and remand. Thank you. All right. Thank you. And we note that you're court appointed, and the court very much appreciates your work on behalf of Mr. Hicks and also Mr. Seckman's work on behalf of the state of West Virginia. We'll come down and greet counsel, and then we're going to take a 10-minute recess. This honorable court will take a brief recess.
judges: Stephanie D. Thacker, Julius N. Richardson, Allison J. Rushing